Our next case is McGuire v. Nationwide Affinity Insurance Company, No. 25-1789. McGuire v. Nationwide Affinity Insurance Company, No. 25-1789. Good morning. May it please the court. My name is Nicholas Cummins. I represent Nationwide Affinity Insurance Company of America. I'd like to reserve three minutes for rebuttal. Your Honors, Pennsylvania law makes it illegal for an insurance company to use an insurance policy form that is not approved by the Pennsylvania Insurance Commissioner. The General Assembly has given the Insurance Commissioner the sole authority to determine whether or not an insurance policy form can be renewed or can be used. Nationwide underwent a years-long process to have its one-product policy forms approved by the Insurance Commissioner for the use and the renewal of existing personal auto insurance policies. The Commissioner gave that approval in 2019, and in reliance on that approval, Nationwide renewed its existing policy onto the one-product forms in 2020. We're familiar with the facts. I'd like to start with the Commissioner's approval. I believe that you're arguing we should give some sort of deference to the Commissioner's approval. It's an interesting argument. Can you explain what type of deference we ought to apply? And if you can, give us an example of a court applying that type of deference. Sure, Your Honor. So, deference should be applied to the Commissioner's determinations for two different reasons. So, the first, and the deference that was primarily discussed, is that you give deference to the interpretation of an ambiguous statute by the agency tasked with interpreting it. You guys have a Chevron doctor or something like that? I'm sorry? Sounds like a Chevron doctor. Well, it is not Chevron because it is Pennsylvania law, and under Pennsylvania law, that is still the law. Plus, I don't understand you all disputing that there's an ambiguity here at all, right? No, Your Honor, and so my position, and Nationwide's position, is that to the extent the court has any authority whatsoever to look at whether or not this policy is a renewal, it comes from Article 20, and Article 20 deals with renewals and cancellations, and it defines a renewal policy as a policy that has types and limits of coverage that are at least equal to the policy that's being superseded. Right, but the Commissioner's approval, how do we deal with that? I mean, should it have any type of a place in our analysis? Should we defer to it in some way? You should defer to it, although I would submit we don't have to get that far because we can begin and end with Article 20, and the statute doesn't allow consideration of the scope of the policy. I'm sure you're assuming that we're going to consider the scope. You have to assume then the definition of renewal is ambiguous. There's no other way to get there, and in that case, you have to look at the way the Commissioner has interpreted that particular statute, and what the Commissioner has said is that when we review these policies, we will not approve what we consider to be a reduction in coverage. However, we consider clarifications of coverage, obvious statements of what the policy was always intended and expected to cover to not be a reduction in coverage. We consider that a clarification, and we will approve that for purposes of renewal. Now, this is the way the Commissioner interprets it, and if the Court believes the statute's ambiguous, which is the only reason we get there, then you have to give deference to that determination, and unless that determination is an abuse of discretion, if two people could not reasonably agree on that definition, then you have to give deference to that determination. That's the first form of discretionary act. The second thing that's at play here, Your Honors, is that this is ultimately the discretionary act of an administrative agency, because when the Commissioner is approving policy forms, they're making policy judgments. There's not a rule book that says this is how you approve it, but they decide how does this affect the market, how does this affect insured people, etc. It's a discretionary act. Under Pennsylvania law, the decisions of an administrative agency, the discretionary decisions, are also entitled to deference. Essentially, it's the same standard of review as the interpretation of an ambiguous statute. It has to be fraud, bad faith, or manifest and flagrant abuse of discretion, which again means if reasonable people could differ on the Commissioner's determination that this is a policy form that is not a, quote, reduction in coverage, but a clarification of what these personal auto policies were always intended to cover, you need to defer to that. I don't want to dwell on this too much, because there's plenty to talk about, but I have to point out in the amicus brief, the Pennsylvania Insurance Department doesn't seem to advocate for deference at all. No, the Commissioner doesn't advocate one way or the other on the subject of deference. What the Commissioner does is the Commissioner explains the reasons that it made the decision that it made, and the Commissioner also explains the implications of upholding the trial court's decision, but it doesn't take a position on the deference one way or the other. I agree with that. All right, so far we've been focusing on the communications between the insurance company and the regulators. If you look at this from the policyholder perspective, isn't the whole point of this massive exercise where you had these 14 corrections you had to work with somehow to communicate to the policyholder, this is a renewal? It doesn't say that anywhere, does it? That it's a renewal? I mean, it doesn't explain that to the policyholder. It does, Your Honor. There is a notice of policy change which the policyholders all receive. Also, specifically, your policy number will change. There'll be certain changes to your policy. Your policy bill will be renewed under these terms of this policy number. All you need to do to accept your renewal is to pay your premium. In addition, when the insured is sent along with the renewal packet, they get the actual declarations, and it says right on here, your renewal policy. So it's very clearly communicated. It calls it a renewal, but it doesn't... I mean, I think what would be clearer is if it said, there are a lot of changes in this policy and notwithstanding these changes, the department of the insurance commissioner says this is a renewal. And therefore, that would trigger in your mind this idea that I'm either going to have to continue to pay the lower policy for not the stacking or pay more and stack. Does it say it that clearly? It doesn't say in exact words. What it says is your policy is going to be renewed and there are changes to the policy and read the policy and the policy is available online. And all you need to do to accept your renewal is to pay the premium. It doesn't talk in there about the insurance commissioner approving the form. But of course, when you take out a policy, it doesn't say, by the way, the insurance commissioners approved this policy for the use in the commonwealth of Pennsylvania. And in some respects, your honor, this case really isn't about the notice provided to the policy holders. What the case is about is about whether or not Pennsylvania law even authorizes the trial court to do what it did, which is to look at the actual changes in the policy and decide on its own. I believe this is a reduction in coverage. So it doesn't matter what the commissioner said, I'm going to deem this a brand new policy four years after the fact. And I think, but in fairness, the district court tried to apply or did apply Pennsylvania law. The district court applied what it would have believed to be Pennsylvania law. It's certainly attempt. I'm not, I'm not poo-pooing the district court's attempt at doing this, your honor, but there is no statute. You can scour the MVFR out. You can scour article 20. There is nothing that author that says that if an insurance carrier makes changes to a policy on renewal, that's a new policy. There's nothing that says an insurance carrier can't make changes to a policy on renewal. There's nothing that says that if insurance carrier makes changes to a policy on renewal, you have to collect new coverage election forms or new stacking waiver forms. That doesn't exist anywhere in the law. But isn't this a tough, if, if we really, it's a difficult case in the respect of line drawing, is it even one minor thing? Is that a new, is that really a renewal? Or let's say 95% is different. If 5% is the same, who, who, who draws the line as to what is a renewal and what's a new policy? I would submit your honor that the legislature purposefully decided not to put the courts in charge of drawing that line. That's why the forms get submitted to the insurance commissioner who takes into account all sorts of things when deciding whether or not to prove policies. How will this affect the market? Can people afford it? Will we still have a solvent insurance system in the commonwealth? The legislature could have very clearly said, this is what you can do on renewal. I mean, the MVFRL is a very detailed, complex statute. The general assembly knows how to say, this is how we want the scope to be. There's specific sections dealing with scope. There's specific sections dealing with what you can and cannot exclude. And so to look at this definition of renewal and say, well, gee, we're going to can't make any changes to the wording of the policy on renewal. The legislature knows how to say that if they want to. And if you look at article 20, article 20 itself actually has provisions that just talk about the coverage being equal as opposed to the types and the limits, which is how we define the renewal. And it's important your honors to understand that there are good reasons for this because frankly, insurance companies need to be able to make changes to insurance policies on renewal. Courts rule language ambiguous all the time. And that doesn't mean that the policy was ever intended to cover it. It doesn't mean that it was underwritten expecting this risk. It just means you didn't state your intent clearly enough as technology changes, as new risks emerge, the risks that carriers never intended to cover. I get that your clients have real reason to want to make amendments, to conform with law or also we have to look at it from the perspective of the consumer as well, right? Well, and that's exactly what the commissioner is doing. I would submit to you that the reason that the forms get approved by the commissioner, who is the person charged with enforcing this law is that the commissioner makes these policy judgments and the courts could have, or of course the legislature could have written a statute that limited what the insurance carrier could do on renewal. But that's not what they did. What they did is said, say, submit your form to the insurance commissioner. The insurance commissioner approves it, but nowhere did legislature authorize the courts to say, let us retroactively go back and we'll decide, is this minor coverage change enough to be a new policy? And particularly you talked about line drawing, your honor. And I don't think that the court authorizes line drawing on scope or the legislature, but if it did, I think that this is not a close case. I mean, ultimately what we're talking about is two very discrete scenarios, probably that would almost never come up where you've had a change. 99% of the car accidents that happen are going to be covered exactly the same under both policies. And because council can think of hypothetical scenarios where maybe if he had his neighbor drive himself to work in his own car, but not for money, that might not be covered. I don't know if that would ever happen, but if we're drawing lines, this is not even close to that line. I mean, this is essentially the same policy language. We'll have to perhaps write something in here, you know, so other others are going to watch what we do here. You know, there are other cases like this around, so we may need some principles to apply. So I understand. And your honor, the principle I would propose to you is that the law does not look at the scope of the policy to determine whether it is a renewal or a new policy, the motor vehicle financial responsibility law, the article 20 simply does not make that a the legislature says is that the types of coverage, meaning the coverage grants and parts or the limits have to be the same. That line's been drawn by the legislature. And with respect to the district court, it's not the district court's place to rewrite that statute or come up with a new version of that statute. So if I could zoom out for a second here and borrow some time from ourselves here. If I take this to 40,000 feet, I think what I hear you saying is that the because this is a highly regulated situation where your company had to go and spend a year negotiating the terms of your policy with the regulators. And at the end of that, the regulators approved that. And the will of the General Assembly is for deference to be given to that. This is this is more like Chevron. And it's possible the district judge thought this is more like Loper Bright and thought it was a judge's place to say what the law is, the law here being the meaning of the insurance policy. And what you're saying is, at least in Pennsylvania, we're still in the Chevron world, or if we're in the Loper Bright world, the General Assembly has told you it's okay to give deference there. Is that a fair summary? From from a very broad perspective, I wouldn't use this Chevron and Loper Bright exactly because we're talking about Pennsylvania law that has it understood. But I'm talking about just the look at it very broadly. I generally agree with that, except that would go one step further and say that the General Assembly has told us specifically what a renewal is. And that's just types and limits and not scope. Gotcha. Two other things. One is a lot of ink in the briefs about whether a renewal, a renewal constitutes a purchase. Do we have to get to that issue? I don't think you do, Your Honor. And the reason is because everyone seems to agree that a renewal is not a purchase, that if this is a renewal, this is not a purchase of coverage. But the district court did at least suggest in its opinion, and it's not clear to me if this is actually the holding, but suggested at least that obtaining a policy with a different scope is a purchase of underinsured motorist coverage, which is the triggering factor to require a new fee. So if you would like me to address that briefly, I will, Your Honor. Well, maybe if you want to in your rebuttal. That's one other question. And that is, you know, I know you and your adversary have urged us to certify this to the Pennsylvania Supreme Court. Could you give us a brief summary of why? Sure, Your Honor. The thumbnail version of it is this. This is an issue that is uniquely... You understand. I mean, perhaps some federal judges might just say, well, it'd be great if they always decided their hard legal questions. So we can't always send every case that way. I certainly understand, Your Honor, and I certainly appreciate the competence of this court to handle the issue. But why is this the sort of unusual thing? But the difference is that we're talking about very unique issues of Pennsylvania law having to do with what the General Assembly intended by its administrative agency to handle, and a subject matter that is uniquely part of Pennsylvania law, this complex regulatory scheme that's constantly subject to no doubt the court is aware. And this has the implications, not just to deal with nationwide's particular policy change in this situation, but what can insurance carriers do going forward ad infinitum? And changes, maybe changes go back 10, 15, 20 years where one minor change has been made to a policy with the commissioner's approval, and suddenly all of those coverage election forms are invalid. And so it's because of the breadth of the implications of this on strictly a state law grounds that I would submit that this is a matter that should be certified to the Supreme Court. Although I would certainly trust Your Honors, of course, to give a proper consideration. Thank you very much. Judge Roth, did you have anything? I'm sorry. No, I have nothing. Okay. Thank you. Please proceed. May it please the court, Mr. Chief Judge, members of the court, Scott Cooper on behalf of the appellee, Eric McGuire. I think to start with, if you received a policy that had a new number, new name of a product, and at least 18 different reductions in coverage, that is a new policy. If it looks like a duck, walks like a duck, quacks like a duck, it's a duck. In this case, nationwide created their own problem because they basically assume the risk. What they should have done was as it was testified to, they should have done the withdrawal of all the policies, and then they could have refiled under one policy, and then they get the new forms. You still have to send out the renewals every year. You still have to mail it. They just didn't want to do it. They wanted to take all seven companies, make it in the one, and they did this throughout the entire country. And in the policy, and I think one of the cases which was not brought up is the Indian Harbor Third Circuit, is that it either has to be same or nearly the same or substantially similar. It may not be one exclusion added, but in this case, if you look what they had to file in Maryland, there was 18 different reductions in coverage, five different endorsements that are no longer offered, and seven ways of broadening the coverage to all these different policies. When they receive this new policy, it's a new policy. If the everyday person looks at it, what was happening here is it's a continuation of coverage, the amount of coverage, not the terms and conditions. And that's what's different here. And that's why when Mr. Cummings was talking about, and Mr. Chief Judge, you asked about the renewal notice and something I think is very important. These were not clarifications. And in the form, and it talks about specifically on appendix 597, it says change in limits and deductibles. And it says halfway down, you'll notice the following changes to your new policies, available coverage limits and deductibles. Your new policy. And that's where it's, and what happened here is, and then what's happening is it's saying, if the current limit is no longer available or below what's mandatory in the state, we're going to reform the policy for the coverage, the amount, not the terms and conditions. So what was happening here, you renewed the coverage limits, but they never renewed the terms and conditions as at least substantially similar. I don't think anyone would disagree that in this case, they were not substantially similar. It was reductions in coverage, and now they have one policy. So what they really should have done is done the withdrawal, refile everything. Now you have to, but didn't they do right? I mean, they went to the insurance commissioner. They, they, they tried to get this blessed and they got it blessed. Well, they got it blessed to the extent that it was, the forms were approved, but the insurance commissioner has been wrong in this area several times. There's at least five cases that I've been involved in that the Supreme Court has told the commissioner or not told the companies that they were wrong. Heller, Gallagher, Donovan, Sales, and Sackett, all were forms approved by the commissioner and the commissioner ended up being wrong. And in fact, in the record, there was something to a different company that we had put in where the company, where the commissioner says, just because we've approved something in the past, we're not going to make the same error going forward. Hold on now. Now you, you wouldn't, you're not arguing that the, that the renewal has to be identical to the, to the prior one, right? Okay. Not at all. So where do we draw the line again? I asked your, your, your friend about this. Well, in this situation, this is a, like he said, this is a unique situation where a company has literally changed all their policies across the whole platform. And, and so I think you have to look at it in the context of what's really happening. You, you have seven different companies allied and nationwide in this that are changing all their policies, reissuing with new numbers. And there was a way for them to avoid this. They just didn't want to do that. And in Idaho, they had to do that. Some other states, you didn't have to do that. So what ended up happening was to save time and money. They went through this whole exercise where all they have to do is you do a plan of withdrawal, refile the forms, which will all be approved. And then you send out new forms. And, and it's not impossible because in SACIT, what the insurance companies did, because they had to give you rejection of stacking forms. If you added the car, what they would send out is they'd send out the forms and say, we're going to give you stacking unless you send this back. It's not that hard. And in this case, we're not saying that the purchase to just to address that quick issue, the purchase, I think is irrelevant in this case. It's if it's a, if it's a renewal, they don't need the new forms. If it's a new policy, they do need the form. So that as far as the deference, the insurance commissioner, you could defer to them on the forms, but not on the approval. They, and they even said in Schneider and even in the underlying record, they don't get involved in these things. Now, all of a sudden they're getting involved. I'm sorry, the insurance commissioner, when they were invited, they were invited in the initial file. And then even on the motion for reconsideration, they didn't get involved. Now, all of a sudden they're getting involved because now they're going to be wrong. And the people have always said, we have to give deference. They didn't necessarily approve these as new policies. This was the company saying, we're going to do, we're going to apply this to new policies as of this day and renewals. I am not seeing anything other than on this amicus brief or something where they said, we approve these as renewal policies. This is the company, it's, we approve, you can use this product on renewals and new policies. Let's get down to the section 991.2001. I think it directs us to look at the quote, types and limits of coverage. You seem to want us to look at and consider the scope of the coverage. There may be two different things. Give us your position on that. Sure. The types or- Types and limits of coverage. Actually, I'm quoting from that section. The types, basically in some situations with this new policy, the type of coverage would not even be able to be obtained. For instance, with the new ride sharing or the permissive user. In the new, I'm going to call it a new policy, they'll call it renewal policy. In the product one policy, we'll call it. Mr. McGuire, if they were in the ride share or the non-permissive use, they could not even get under-insured motorist coverage on the first car. That's changing the type of coverage and the limit of coverage. Because you've added these new conditions, you've changed the types and limits of what you're able to get on the existing policy. There's things that you could have gotten under the old policy that you can no longer even get under the new one. It has nothing to do with the second car or anything. When they're saying types and limits, you can't even get, he's paying. If he was doing the ride share under this new policy, they would not get on the first car even if he was doing it at the time. Under the old policy, they would get it. That's changing the types and limits. I would stress that the Indian Harbor case is very important because in that case, the Third Circuit here said even one exclusion, the way it impacted the policy was enough to create a new policy that they had to get all these new forms. But that's why it's important in this case to look at it, that it is a unique situation. I think one of the things that the companies try to do is they try to say, well, if you rule this way, the sky is going to fall or the whole system is going to go under. All they had to do is what Donegal is doing now because they are doing, you do a plan of withdrawal, you file your forms, it gets approved, end of story. We wouldn't be here because they would have given him new forms or not new forms and they would have complied. They just did not want to. That's why I think that deposition is very important because they're admitting they just didn't want to do the plan of withdrawal. They tried to go through the insurance department to get this one product approved, which they did. That was the 14 different objections. But the department's not saying these are new policies or renewals. What it's saying is this will apply to renewals going forward and new policies issued going forward, but there's nothing there saying that these are not going to be considered new policies. To make sure I understand, you're saying that when all this year of back and forth between the insurance company and the regulators, the net effect of that is we approve this form, but we do not say one way or the other whether it's a renewal or a new policy. Correct. That's what it comes down to. They're approving the forms. Now, whether you could approve, whether they're all valid or not, that's different, but they're not approving, oh, you could do this and you don't have to give out new forms for new policy. It's a new policy. The product one was a new policy. All seven different companies were combined in one and that's what they basically done. I think I heard your colleague be saying the whole reason we went through this rigmarole was we wanted to be able to treat this form as a renewal. The reason I was asking questions earlier is, well, that may be fine as between the regulators and the company, but how does that communicate to the policyholder? That's the gap. The problem is if I'm reading this, it says your new policy. It's the everyday person and let's be real, no one reads those forms except me and no one else here has read their policies. I'm glad you read them. I'm just saying, but it says your new policy and what was happening here is the coverages were continuing on. They basically take the new policy, take the old liability, deductible, uninsured, underinsured, and then put it on the new policy. That continues and then that's why, but the coverages didn't continue the same amount. There was 30 different changes from the older policy, depending on which policy you had, because some policies already had the ride share or some policies had the permissive. They had to put it all together. Aren't there always changes going on though with even a renewal policy? Don't they always have some change? The law is constantly changing. They're punching up their forms. Is that really unusual in the auto insurance industry? Not at all. It's commonplace. It happens every year. They add an exclusion, they take this out, they do this. Is that a new policy? Not necessarily. No. That's why this situation is unique. If it's not substantially similar or even this is not even remotely close, this is like saying a dog is now a cat or something like that. Are the types and limits still the same? Limits are the same. The limits are the same, but the types are not because you can't even get some of the types anymore. Under the old policy, you could get ride share, you could get permissive. Now you can't get ride share, you can't get permissive. You can't get a tourer, which is like the Airbnb for the car. Under the old policy, you could. They're not clarifications because if they were clarifications, they wouldn't need to do it. There would be an ambiguity. You're putting it in. The reason they did the ride share too is because there was a new law and there was a gap. That's why they had to change it to once you're logged in, you're off because they used to have to cover it. You're getting different types of coverage from one policy to the next. I'm not sure it matters legally, but can you tell me what in the either new or renewal policy would have changed your client's mental calculus about whether to pay the extra premium and take the stacking? Were any of the changes in the policy between the old and the new or the old and the renewal have anything to do with uninsured motorist and stacking? Candidly, he probably, if they sent him new forms, he probably would have just signed the rejection of that. I'm just based on the history. I'm not, it's, this is really more and he, but he may have not because in the record that the premiums went down for uninsured and underinsured motorist coverage after the change, because they were providing less coverage and stacking is cheap coverage. So your point is if it's a new policy, it triggers a new regime and they have to give him notice and opportunity to think this over again. Correct. And just, I know I'm dumb, but real, as far as the certification, we would agree. We've got, we've got two choices. We do, as we, as we, is our charge in a diversity case, we predict what the Supreme court of to, to ask them because there is the conflicting case from the middle district that this conflicts with the Western. And there's also a superior court and not a, there's a state court case. And if not, then you're going to have a whole bunch of cases going up the state level, at least this gets to the head and this court's done it in wolf Donovan sales and Barnard. So, okay. Well, and we would respectfully request it. The court be affirmed or in the alternative, the case certified. Okay. Judge Roth. Do you have any other, any other questions? I have no other questions. Thank you. Great. Thank you counsel. And we'll hear rebuttal. Thank you, your honors. First to address one thing head on the insurance commissioner approved this policy for the use in renewal business, new business and renewal business. It was a separate approval separately approved. It's in the appendix, the commissioners designee testified to it at five 79. And in other places, it was approved for that purpose. I heard that there were 18 reductions in coverage. There have only been two pointed out by the trial court and a total of four. If you count the two additional that um, Mr. Cooper put in his brief, I don't know where 18 reductions in coverage come from. And they are at best minor. And one of these is the policy excluded racing on a closed course. And it was clarified that if you're speed testing your car at a closed course, that's also falls with a bad exclusion. We're talking about minor changes to this policy. I asked your adversary about every year or there are there clarifications or new language, let's say, as Mr. I don't have any data for it. Okay. But as Mr. Cooper says, this is fairly commonplace, that this happens. And the fact of the matter is, Mr. Cooper seems to say that, well, you know, if it's just one change, then maybe that's okay. That's not what the trial court said. When the trial court said any reduction in coverage is a brand new policy. Um, there's been a lot of discussion, but not much briefing on the Indian Harbor cases. Actually, it was judge Roth's decision. Um, Indian, it was excellent decision, although I'd respectfully suggest it doesn't apply to this particular case. Um, but, uh, the Indian Harbor case involved a, I think it was a pollution policy, uh, where there was $10 million in coverage for 10 years with a certain number of sites. And the company promised to offer a renewal. And when it came time to offer the renewal, they said, we'll only give you $5 million in coverage and only for one year. And the one site where you've had claims, we're going to take that off the list. And it was a contractual question of what, what was meant by renewal in that context. But what judge Roth said in that case was it doesn't need to be identical. It needs to be a recognizable extension of the coverage. Now, because it's a commercial policy, I suggest a decision doesn't apply here, but if you adopt that standard, again, this is not a close call. 99% of the things that were covered before are covered now. And it's not even clear that those things aren't covered now because these are all hypotheticals anyway, your honors. Um, the only other thing that I would like to say is that, um, the Supreme court and this court and the superior court have repeatedly said that changes to a policy are not the issuance of a new policy. Now issuance is a standard for rejection of stacking, but the question is, did you issue a policy Supreme court in blood, this court in Virginia, uh, this court in Geist, the superior court in Goodville, superior court in Smith have all said the same thing. Substantive changes to an existing policy are not the issuance of a new policy. So why would some changes to exclusions on a renewal suddenly be a new policy? It doesn't fit with Supreme court or this court's case law. Thank you very much. We'd ask that the judgment be, uh, reversed and judgment be under for nationwide. Thank you. Thank you. Council. We'll take this case under advisement. Thank council for their excellent arguments today and all their briefing and a counselor amenable. We'd love to greet you at sidebar off the record for a minute.